UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CARINA KING and JAMES KING,

**Plaintiffs,**

v.                                                    CASE NO:

MRAD PHASE I, a Florida limited liability
corporation, d/b/a MARDEN RIDGE; NM
RESIDENTIAL, a Florida limited liability
corporation; and DONNA WILKENFELD.

**Defendants.**

_____/

## COMPLAINT

COMES NOW the Plaintiffs, CARINA KING and JAMES KING, by and through their

undersigned counsel, sues the Defendants, MRAD PHASE I, d/b/a MARDEN RIDGE; NM

RESIDENTIAL, and DONNA WILKENFELD and would state as follows:

### JURISDICTIONAL ALLEGATIONS

1. This is an action for declaratory judgment, permanent injunctive relief, and damages for

   discrimination on the basis of handicap in the rental of housing pursuant to the Fair

   Housing Act of 1968, as amended, 42 U.S.C. § 3601 et seq. Defendants, the owners,

   managers, and/or employees of a residential apartment complex, discriminated against

   Plaintiffs by wrongfully denying their reasonable accommodation and engaging in

   retaliatory conduct for the Plaintiff's exercising their Fair Housing rights.

2. The Court has original jurisdiction pursuant to 11 U.S.C. § 1331, 42 U.S.C.§ 3613, because this lawsuit is brought under the Fair Housing Act, 42 U.S.C. § 3601 et. Seq. and supplemental jurisdiction under U.S.C. § 1291, over the Plaintiff's claims under the Florida Fair Housing Act, §760.20, et seq.

3. Venue is proper in the Middle District of Florida, Orlando Division, under 28 U.S.C. §1391(b) because the claim arose in this judicial district.

4. Plaintiffs CARINA KING and JAMES KING (hereinafter "KING") are a resident of the State of Florida and is otherwise sui juris. KING currently resides in Orange County, Florida.

5. Defendant,  MRAD PHASE I is limited liability corporation which owns and operates a residential apartment complex operating under the fictious name of MARDEN RIDGE (Hereinafter MARDEN) located at 1595 Marden Ridge Loop, Apopka, Florida 32703. It's registered principal place of business is 151 Southhall Lane, suite 150, Maitland, FL 32751.

6. Defendant NM RESIDENTAL, LLC (hereinafter NM), is a Florida limited liability corporation and operates a property management company that manages MARDEN RIDGE. It's registered principal place of business is 151 Southhall Lane, Suite 159, Maitland, FL 32751.

7. Defendant DONNA WILKENFELD (hereinafter referred to as "WILKENFELD") is property manager for NM  and was/is acting under the scope of her employment with NM in discriminating against KING. She is the property manager at 1595 Marden Ridge Loop, Apopka, Florida 32701.

**PARTIES**

8.  Plaintiff 's KING are United States citizens with a minor child who suffers from a disability as defined by 42 U.S.C. 53602(h). His disability impairs major life activities including social and general living functioning.

9.  Defendant MARDEN is a "dwelling" within the meaning of 42 U.S.C. §3602(b). It is a multi-rise apartment complex.

10. Defendant NM is a property management company holding itself out as the property managers for MARDEN. It's registered principal place of business is identical to that of MARDEN.

11. Defendant WILKENFELD is a property manager for MARDEN and employed by NM and her employment responsibilities include interacting with tenants and lease issues.

## FACTUAL BACKGROUND

12. The KINGS executed a lease with MARDEN on or about September 14, 2018. (See attached Exhibit A). The lease term was to run from October 1, 2018 to September 30, 2019.

13. On or about February 2019 the Kings first had issues with the noise when new tenants.

14. The KINGS have a 5-year-old son who is autistic. Loud noises and vibrations, such as were occurring from the occupants above them cause him to shut down until the noise stops and casues severe sensory issues.

15. This issue was identified and addressed by the minor son's physician who drafted a letter reflecting his housing needs.(See attached Exhibit "B".)

16. The KINGS contacted NM about the issue in April 2019.

17. The KINGS contacted law enforcement about the issue the first time on April 3, 2019.

18. The KINGS requested a reasonable accommodation, a move from their current apartment to a unit that is not directly below the loud upstairs occupants or requested that the upstairs occupants be moved.

19. The reasonable accommodation request was denied, and no action was taken by MARDE, NM or WILKENFELD.

20. The KINGS through their counsel made a formal request for a reasonable accommodation in writing on May 29, 2019. (See attached Exhibit "C")

21. No response was provided, and as second formal request was made in writing on June 10, 2019. (See attached Exhibit "D")

22. On June 17, 2019, NM and WILKENFELD sent an email to the KINGS requesting that they renew their lease for another year (See attached Exhibit "E")

23. On July 15, 2019 the KINGS made filed a formal Complaint with HUD alleging discrimination under the Fair Housing Act. (See attached Exhibit "F")

24. On July 31, 2019, subsequent to filing the Complaint with HUD WILKENFELD sent notification to the KINGS that they were not going to renew their lease. (See attached Exhibit "G")

## CLAIMS FOR RELIEF

### Count I: Violations of the Fair Housing Act

25. The allegations listed in Paragraphs 1-24 are incorporated herein by reference.

26. Defendant's, MARDEN, NM and WILKENFELD actions described above constitute:

    a. Discrimination in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of disability, in violation of the FHAct, 42 U.S.C.§3604(f)(2);

    b.  A refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person an equal opportunity to use and enjoy a dwelling in violation of the FHAct, 42 U.S.C. §3604(f)(3)(B);

    c.  Interference with the rights of persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged persons with disabilities in the exercise or enjoyment of rights granted or protected by the FHAct, in violation of 42 U.S.C. §3617.

27. As a result of the Defendant's actions described above, KINGS suffered, and continue to suffer, irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional distress, aggravation to multiple pre-existing conditions and a deprivation of their rights to equal housing opportunities regardless of disabilities.

28. Defendant, MARDEN, NM and WILKENFELD acted intentionally, willfully, and in disregard for the rights of the KINGS.

29. The KINGS have been the victims of Defendant MARDEN, NM and WILKENFELD's discriminatory conduct and are "aggrieved person's" within the meaning of 42 U.S.C. §3602(i) and have suffered harm and damages as a result of Defendant's conduct.

## Count II: Retaliation

30. The allegations in Paragraph 1-28 are incorporated herein by reference.

31. In acting as alleged, Defendants have engaged in a practice of retaliation against the KINGS who made lawful and reasonable accommodation requests they are entitled to under the FHAct. In response to making said requests, the Defendant's retaliated against the KINGS by no longer offering a lease renewal. By retaliating against the KINGS for

exercising their rights under the law, the conduct by the Defendants is in violation of the FHAct 42 U.S.C. §3617.

32. As a matter of public policy, the law protects tenants against retaliatory eviction, motivated by an attempt to, in effect, punish them for their exercise of legally protected rights. The KINGS have been warned of being evicted if they do not vacate at the end of their current lease.

33. As a proximate result of the retaliatory conduct of MARDEN, NM and WILKENFELD, the KINGS have suffered, and continue to suffer, irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional distress, aggravation to multiple pre-existing conditions and a deprivation of their rights to equal housing opportunities regardless of disabilities.

34. The acts of MARDEN, NM and WILKENFELD were willful, wanton, malicious, and oppressive, and justify the awarding of punitive damages.

**WHEREFORE,** Plaintiffs respectfully request that this Court:

a. Assume jurisdiction of this action; and

b. Declare MARDEN, NM and WILKENFELD's actions complained herein to be  in violation of the Fair Housing Act, Title VIII of the 1968 Civil Rights Act, 42 U.S.C. § 3604 (a), and (b).; and

c. Order that MARDEN, NM and WILKENFELD take appropriate affirmative action to ensure that the activities complained of are not engaged in again by them or any of their agents; and

d. Renew the KINGS lease for an additional year as previously offered and grant their reasonable accommodation to be moved at no cost to a new unit that is not subject to the noise they are currently exposed to and have complained of.

e. Permanently enjoin MARDEN, NM and WILKENFELD, their agents, employees, and successors from discriminating on the basis of disability against any person in violation of Title VIII of the 1968 Civil Rights Act and in violation of the Civil Rights Act of 1964; and

e. Award appropriate punitive and compensatory damages to the KINGS against MARDEN, NM and WILKENFELD; and

f. Award the KINGS attorney fees and costs pursuant to 42 U.S.C. § 3613(c)(2), and

g. Provide such further relief as this court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all issues so triable.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support

after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated this _20th_ day of _September_ 2019.

Respectfully submitted,

CARINA KING

JAMES KING

By and through their attorney:

JEFFREY R. HUSSEY, Esquire

Jeffrey R. Hussey, Esquire
Florida Bar # 084560
Community Legal Services of Mid Florida
122 East Colonial Drive Suite 200
Orlando, FL 32801
Phone (407) 704-5106
jeffreyh@clsmf.org





## Apartment Lease Contract

Date of Lease Contract: **September 14, 2018**
(when the Lease Contract is filled out)

*This is a binding document. Read carefully before signing.*

---

### Moving In — General Information

**1. PARTIES.** This Lease Contract (sometimes referred to as the "lease") is between you, the resident(s) (list all people signing the Lease Contract): **Carina Brooks King, James King**

_____ and us, the owner:
**Marden Ridge Apartments**
_____

(name of apartment community or title holder). You've agreed to rent Apartment No. **213**, at **1495 Marden Ridge Loop** (street address)
in **Apopka** (city),
Florida, **32703** (zip code) for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors in interest or assigns). Written or electronic notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

The ☒ Owner or ☐ Manager of these apartments is **Marden Ridge Apartments**

whose address is **1595 Marden Ridge Loop**
_____. Such person or company is authorized to receive notices and demands in the landlord's behalf.

A lease termination notice must be given in writing. Notice to the landlord must be delivered to the management office at the apartment community or any other address designated by management as follows: **1595 Marden Ridge Loop, Apopka, FL 32703**

Notice to the tenant must be delivered to the Resident's address as shown above.

**2. OCCUPANTS.** The apartment will be occupied only by you and (list all other occupants not signing the Lease Contract):
**Jason King**
_____

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than **10** days without our prior written consent. If the previous space isn't filled in, two days per month is the limit.

**3. LEASE TERM AND TERMINATION NOTICE REQUIREMENTS.** The initial term of the Lease Contract begins on the **1st** day of **October**, **2018**, and ends at midnight the **30th** day of **September**, **2019**. This Lease Contract will automatically renew month-to-month unless either party gives at least **60** days' written notice of termination or intent to move-out as required by this paragraph and paragraph 36 (Move-Out Notice). If the number of days isn't filled in, at least 30 days' notice is required. In the event you fail to provide us with the required number of days' written notice of termination and intent to vacate coinciding with the lease expiration date, as required by this paragraph and paragraph 36 (Move-Out Notice), you acknowledge and agree that you shall be liable to us for liquidated damages in the sum of $_____ (equal to one month's rent) in accordance with Fla. Stat. §83.575(2). This liquidated damages amount is exclusive to insufficient notice under this paragraph and paragraph 36 (Move-Out Notice), and does not limit collection rights with regard to other amounts potentially owed to us. If the lease term is not a month-to-month tenancy, we must notify you with written notice no later than _____ **60** days before the end of the lease term if the lease will not be renewed.

**Month-to-Month Tenancies:** In the event this Lease Contract renews on a month-to-month basis, you must pay the amount of rent we charge at the time the month-to-month tenancy commences pursuant to this paragraph and paragraph 15 (Rent Increases and Lease Contract Changes), inclusive of any applicable month-to-month fees and/or premiums. We may change your rent at any time thereafter during a month-to-month tenancy by giving you no less than 30 days' written notice. You will be required to abide by all notice requirements set forth in the lease and remain liable to pay all other applicable charges due under the lease during your month-to-month tenancy unless specifically changed in writing. All sums due under this paragraph shall be additional rent. We may require you to sign an addendum written for month-to-month tenants. Either party may terminate a month-to-month tenancy by giving the other party written notice no later than 15 days' prior to the end of the monthly rental period. If you fail to provide us at least 15 days' written notice to terminate a month-to-month tenancy prior to the end of the monthly rental period, you shall be liable to us for an additional 1 month's rent.

**4. SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ **1450.00**, due on or before the date this Lease Contract is signed.

---

Any security deposit or advance rent you paid is being held in one of the following three ways as indicated below (Landlord check one option):

☐ 1. In a separate NON-INTEREST bearing account for your benefit in the following bank: _____
whose address is _____
_____ ; OR

☐ 2. In a separate INTEREST bearing account for your benefit in the following bank _____
whose address is _____

If an interest bearing account, you will be entitled to receive and collect interest in an amount of at least 75 percent of the annualized average interest rate payable on such account or interest at the rate of 5 percent per year, simple interest, whichever the landlord elects.

☒ 3. In a commingled account at the following bank _____
**Huntington Bank** _____
whose address is _____
_____
provided that the landlord posts a surety bond with the county or state, as required by law, and pays you interest on your security deposit or advance rent at the rate of 5 percent per year simple interest.

_CBK JCK_ Initials of Resident. Resident acknowledges receiving a copy of F.S. 83.49(3)(d) which provides as follows:

YOUR LEASE REQUIRES PAYMENT OF CERTAIN DEPOSITS. THE LANDLORD MAY TRANSFER ADVANCE RENTS TO THE LANDLORD'S ACCOUNT AS THEY ARE DUE AND WITHOUT NOTICE. WHEN YOU MOVE OUT, YOU MUST GIVE THE LANDLORD YOUR NEW ADDRESS SO THAT THE LANDLORD CAN SEND YOU NOTICES REGARDING YOUR DEPOSIT. THE LANDLORD MUST MAIL YOU NOTICE, WITHIN 30 DAYS AFTER YOU MOVE OUT, OF THE LANDLORD'S INTENT TO IMPOSE A CLAIM AGAINST THE DEPOSIT. IF YOU DO NOT REPLY TO THE LANDLORD STATING YOUR OBJECTION TO THE CLAIM WITHIN 15 DAYS AFTER RECEIPT OF THE LANDLORD'S NOTICE, THE LANDLORD WILL COLLECT THE CLAIM AND MUST MAIL YOU THE REMAINING DEPOSIT, IF ANY.

IF THE LANDLORD FAILS TO TIMELY MAIL YOU NOTICE, THE LANDLORD MUST RETURN THE DEPOSIT BUT MAY LATER FILE A LAWSUIT AGAINST YOU FOR DAMAGES. IF YOU FAIL TO TIMELY OBJECT TO A CLAIM, THE LANDLORD MAY COLLECT FROM THE DEPOSIT, BUT YOU MAY LATER FILE A LAWSUIT CLAIMING A REFUND.

YOU SHOULD ATTEMPT TO INFORMALLY RESOLVE ANY DISPUTE BEFORE FILING A LAWSUIT. GENERALLY, THE PARTY IN WHOSE FAVOR A JUDGMENT IS RENDERED WILL BE AWARDED COSTS AND ATTORNEY FEES PAYABLE BY THE LOSING PARTY.

THIS DISCLOSURE IS BASIC. PLEASE REFER TO PART II OF CHAPTER 83, FLORIDA STATUTES, TO DETERMINE YOUR LEGAL RIGHTS AND OBLIGATIONS.

**5. KEYS AND FURNITURE.** You will be provided **4** apartment key(s), **2** mailbox key(s), and **2** other access devices for **2 key fob**. Your apartment will be (check one): ☐ furnished or ☒ unfurnished. See paragraph 9, Locks and Latches.

**6. RENT AND CHARGES.** Unless modified by addenda, you will pay $ **1600.00** per month for rent, payable in advance and without demand:
☐ at the on-site manager's office, or
☒ at our online payment site, or
☒ at **resident.mardenridge.com**

Prorated rent of $_____ is due for the remainder of (check one):
☐ 1st month or ☐ 2nd month, on _____

Otherwise, you must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. At our discretion, we may convert any and all checks via the Automated Clearing House (ACH) system for the purposes of collecting payment. We may, but are not required to, accept rent through direct debit, ACH or other electronic

---

© 2018, National Apartment Association, Inc. - 2/2018, Florida

means established and approved by us. If you don't pay all rent on or before the __4th__ day of the month, you'll pay an initial late charge of $ __30.00__ plus a late charge of $ _____ per day after that date until paid in full. Daily late charges will not exceed 15 days for any single month's rent. You'll also pay a charge of $ __35.00__ for each returned check or rejected electronic payment, plus initial and daily late charges from due date until we receive acceptable payment. If you don't pay on time, or fail to pay any rent, utilities or contractual fees due under a prior lease (if this is a renewal lease, you'll be delinquent and all remedies under this Lease Contract will be authorized. We'll also have all other remedies for such violation.

We and you agree that the failure to pay rent timely or the violation of the animal restrictions results in added administrative expenses and added costs to us, the same as if we had to borrow money to pay the operating costs of the property necessary to cover such added costs. We both agree that the late fee and animal violations provisions are intended to be liquidated damages since the added costs of late payments and damages in such instances are difficult to determine. We also both agree that the amount of late rent and animal violation fees charged are reasonable estimates of the administrative expenses, costs, and damages we would incur in such instances.

All of the foregoing charges will be considered to be additional rent.

7. **UTILITIES.** We'll pay for the following items, if checked:
   ☐ water   ☐ gas   ☐ electricity   ☐ master antenna.
   ☐ wastewater ☐ trash ☐ cable TV ☐ other_____
   You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected— including disconnection for not paying your bills—until the lease term or renewal period ends. Cable channels that are provided may be changed during the lease term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance. Resident shall not heat the apartment using gas-operated stoves or ovens which were intended for use in cooking.

   Where lawful, all utilities, charges and fees of any kind under this lease shall be considered additional rent, and if partial payments are accepted by the Landlord, they will be allocated first to non-rent charges and to

rent last. Failure to maintain utilities as required herein is a material violation of the Lease and may result in termination of tenancy, eviction and/or any other remedies under the Lease and Florida law.

8. **INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

   We urge you to get your own insurance for losses to your personal property and/or personal injuries due to theft, fire, rain, flood, hurricane, wind damage, water damage, pipe leaks and the like.

   Additionally, you are [check one] ☐ required ☒ not required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance throughout your tenancy, including any renewal periods and/or lease extensions is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

9. **LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done before you move into your apartment.

   You may at any time ask us to change or rekey locks or latches during the Lease Term. We must comply with those requests, but you must pay for them, unless otherwise provided by law.

   Payment for Rekeying, Repairs, Etc. You must pay for all repairs or replacements arising from misuse or damage to devices by you or your family, occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair or change or rekey the same device during the 30 days preceding your request and we have complied with your request. Otherwise, you must pay immediately after the work is completed.

---

### Special Provisions and "What If" Clauses

10. **SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

    __See special provisions on the last page__
    _____
    _____
    _____
    _____

    See any additional special provisions.

11. **EARLY MOVE-OUT.** Unless modified by an addendum, if you:
    (1) move out without paying rent in full for the entire Lease Contract term or renewal period; or
    (2) move out at our demand because of your default; or
    (3) are judicially evicted.

    You will be liable for all rent owed at the time and as it becomes due under the terms of your lease agreement until the apartment is re-rented.

12. **REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment or apartment community due to a violation of the Lease Contract or rules, improper use, or negligence by you or your guests or occupants or any other cause not due to our negligence or fault as allowed by law, except for damages by acts of God to the extent they couldn't be mitigated by your action or inaction. You'll defend, indemnify and hold us harmless from all liability arising from your conduct or that of your invitees, your occupants, your guests, or our representatives who at your request perform services not contemplated in this Lease. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following that result from your or your invitees, guests, or occupants' negligence or intentional acts: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

13. **CONTRACTUAL LIEN AND PROPERTY LEFT IN APARTMENT.** All property in the apartment or common areas associated with the apartment is (unless exempt under state statute) subject to a contractual lien to secure payment of delinquent rent. The lien will attach to your property or your property will be subject to the lien at the time you surrender possession or abandon the premises. For this purpose, "apartment" includes common areas associated with the apartment and interior living areas and exterior patios, balconies, attached garages, and storerooms for your exclusive use.

    Removal After Surrender or Abandonment. We or law officers may, at our discretion, remove, dispose and/or store all property remaining in the apartment or in common areas (including any vehicles you or any

occupant or guest owns or uses) if you surrender, are judicially evicted, or abandon the apartment (see definitions in paragraph 41 (Deposit Return, Surrender, and Abandonment)).

THE LANDLORD IS NOT REQUIRED TO COMPLY WITH §. 715.104. BY SIGNING THIS RENTAL AGREEMENT, THE TENANT AGREES THAT UPON SURRENDER, ABANDONMENT, OR RECOVERY OF POSSESSION OF THE DWELLING UNIT DUE TO THE DEATH OF THE LAST REMAINING TENANT, AS PROVIDED BY CHAPTER 83, FLORIDA STATUTES, THE LANDLORD SHALL NOT BE LIABLE OR RESPONSIBLE FOR STORAGE OR DISPOSITION OF THE TENANT'S PERSONAL PROPERTY.

*Storage.* We may store, but have no duty to store, property removed after surrender, eviction, or abandonment of the apartment. We're not liable for casualty loss, damage, or theft except for property removed under a contractual lien. You must pay reasonable charges for our packing, removing, storing, and selling any property.

14. **FAILING TO PAY RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, or any other rent due under this lease we may end your right of occupancy and recover damages, attorney's fees, court costs, and other lawful charges.

15. **RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the Initial Lease Contract term ends, except for any special provisions listed in paragraph 10 (Special Provisions), by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 18 (Community Policies or Rules). If, at least 5 days before the advance notice deadline referred to in paragraph 3 (Lease Term and Termination Notice Requirements), we give you written notice of rent increases or lease changes effective when the lease term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or lease changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 36 (Move-Out Notice).

16. **DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

    If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

    (1) If we give written notice to any of you when or after the initial term as set forth in Paragraph 3 (Lease Term and Termination Notice Requirements)—and the notice states that occupancy has been delayed because of construction or a previous resident's holding

☑ Blue Moon eSignature Services Document ID: 151684513

over, and that the apartment will be ready on a specific date—you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the initial term as set forth in Paragraph 3 (Lease Term and Termination Notice Requirements) and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in Paragraph 3

(Lease Term and Termination Notice Requirements) for all purposes. This new date may not be moved to an earlier date unless we and you agree.

**17. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it. At our request, any utility provider may give us information about pending or actual connections or disconnections of utility service to your apartment.

---

## While You're Living in the Apartment

**18. COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

**19. LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may exclude, and/or "No Trespass" from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community. Tenant agrees that landlord reserves the right to trespass any non-tenant from the leased premises and common areas.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

**20. PROHIBITED CONDUCT.** You and your occupants or guests may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; engaging in criminal activity that threatens the health, safety, or right to peaceful enjoyment of others in or near the apartment community (regardless of arrest or conviction); storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; or injuring our reputation by making bad faith allegations against us to others. You agree to communicate and conduct yourself at all times in a lawful, courteous, and reasonable manner when interacting with our employees, agents, independent contractors, and vendors; other residents, occupants, guests or invitees; or any other person on the premises. You agree not to engage in any abusive behavior, either verbal or physical, or any form of intimidation or aggression directed at our employees, agents, independent contractors, and vendors; other residents, occupants, guests or invitees; or any other person on the premises. If requested by us, you agree to conduct all further business with us in writing. Any violation of this paragraph shall be a material breach of this Lease and will entitle us to exercise all rights and remedies under the Lease and law.

**21. PARKING.** We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, recreational vehicles, and storage devices by anyone. We may have unauthorized or illegally parked vehicles towed under an appropriate statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license or no current inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or

(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster; or
(13) belongs to a resident and is parked in a visitor or retail parking space.

**22. RELEASE OF RESIDENT.** Unless you're entitled to terminate your tenancy under paragraphs 10 (Special Provisions), 16 (Delay of Occupancy), 23 (Military Personnel Clause), 31 (Responsibilities of Owner), 36 (Move-Out Notice), or by separate addendum, you won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

**23. MILITARY PERSONNEL CLAUSE.** Any "servicemember" as defined in Fla. Stat. §83.43(14) and Fla. Stat. §250.01 may terminate his or her tenancy by providing us with written notice of termination to be effective on the date stated in the notice that is at least 30 days after our receipt of the notice if the criteria as specified in Fla. Stat. §83.682 are met. Your notice to us must be accompanied by either a copy of the official military orders or a written verification signed by the servicemember's commanding officer.

After your move out, we'll return your security deposit, less lawful deductions. If you or any co-resident is a dependent of a servicemember covered by the U.S. Servicemembers Civil Relief Act, your tenancy may not be terminated under this paragraph without applying to a court and showing that your ability to comply with the Lease Contract is materially affected by reason of the servicemember's military service. Upon termination of your tenancy under this paragraph, the tenant is liable for prorated rent due through the effective date of the termination payable at such time as would have otherwise been required by the terms of this Lease Contract. The tenant is not liable for any other rent or damages due to the early termination of the tenancy as provided for in this paragraph.

**24. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other access control devices. Upon termination of your tenancy under this paragraph, the tenant is liable for prorated rent due through the effective date of the termination payable at such time as would have otherwise been required by the terms of the lease. The tenant is not liable for any other rent or damages due to the early termination of the tenancy as provided for in this paragraph.

Smoke Detectors. We'll furnish smoke detectors as required by statute and we'll test them and provide working batteries when you first take possession. After that, you must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke detector malfunctions to us. Neither you nor others may disable smoke detectors. If you damage or disable the smoke detector or remove a battery without replacing it with a working battery, you may be liable to us under state statute for $100 plus one month's rent, actual damages, and attorney's fees. If you disable or damage the smoke detector, or fail to replace a dead battery or report malfunctions to us, you will be liable to us and others for any loss, damage, or fines from fire, smoke, or water.

Casualty Loss. We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law. We have no duty to remove any ice, water, sleet, or snow but may remove any amount with or without notice. During freezing weather, you must ensure that the temperature in the apartment is sufficient to make sure that the pipes do not freeze (we suggest at least 50 degrees). If the pipes freeze or any other damage is caused by your failure to properly maintain the heat in your apartment, you'll be liable for damage to our and other's property. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for those services.

Crime or Emergency. Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity or other emergency involving imminent harm. You should then contact our representative. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security. If we provide any access control devices or security measures upon the property, they are not a guarantee to prevent crime or to reduce the risk of crime on the property. You agree that no access control or security measures can eliminate all crime and that you will not rely upon any provided access control or security measures as a warranty or guarantee of any kind. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or

guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You must also furnish us with the law-enforcement agency's incident report number upon request.

**Fire Protection.**   Please check only one box: ☒ Fire protection is NOT available or ☐ Fire protection IS AVAILABLE.  Description of fire protection available (not applicable unless the box is checked):

☒ Sprinkler System in apartment
☒ Sprinkler System in common areas
☒ Smoke detector
☐ Carbon monoxide detector
☒ Fire extinguisher
☐ Other (Describe): _____

**Building, Housing, or Health Codes.**   We will comply with the requirements of applicable building, housing, and health codes. If there are no applicable building, housing, or health codes, we will maintain the roofs, windows, screens, doors, floors, steps, porches, exterior walls, foundations, and all other structural components in good repair and capable of resisting normal forces and loads, and the plumbing in reasonable working condition. However, we are not responsible for the repair of conditions created or caused by the negligent or wrongful act or omission of you, a member of your family, or any other person on the premises, in the apartment, or in the common areas of the apartment community with your consent.

**25. CONDITION OF THE PREMISES AND ALTERATIONS.**   You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. We disclaim all implied warranties. You'll be given an Inventory and Condition form on or before move-in. You must note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors, furniture, telephone and cable TV wiring, screens, locks, and access control devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements and/or added fixtures to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**Pest Control.**   We will make reasonable provisions for the extermination of rats, mice, roaches, ants, wood destroying organisms, and bed bugs. If you are required to vacate the premises for such extermination, we shall not be liable for damages, but rent shall be abated. If you are required to vacate in order to perform pest control or extermination services, you will be given seven (7) days written notice of the necessity to vacate, and you will not be required to vacate for more than four (4) days. We may still enter your apartment as provided in Paragraph 28 (When We May Enter) of this Lease and F.S. 83.53 or upon 12 hours notice to perform pest control or extermination services which do not require you to vacate the premises. You must comply with all applicable provisions of building, housing and health codes and maintain the apartment and adjacent common areas in a clean and sanitary manner. You must properly dispose of and promptly remove all of your garbage so as to prevent foul odors, unsanitary conditions, or infestation of pests and vermin in your apartment, adjacent common areas (such as breezeways), and other common areas of the apartment community.

**Waterbeds.**   You are allowed to have a waterbed or flotation bedding systems provided it complies with any applicable building codes and provided that you carry flotation or renter's insurance which covers any damages which occur as a result of using the waterbed or flotation bedding system. You must provide us with a copy of the policy upon request. You must also name us as an additional insured at our request.

**26. REQUESTS, REPAIRS, AND MALFUNCTIONS.   IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY RELATED MATTERS—IT MUST BE SUBMITTED THROUGH EITHER THE ONLINE TENANT/MAINTENANCE PORTAL, OR SIGNED AND IN WRITING AND DELIVERED TO OUR DESIGNATED REPRESENTATIVE** (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of; water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part.

If we believe that fire, catastrophic damage, extermination issues, mold and mildew or any habitability issues whatsoever is substantial, or that performance of needed repairs poses a danger to you, we may terminate this Lease Contract within a reasonable time by giving you written notice.

**27. ANIMALS.**   No animals (including mammals, reptiles, birds, fish, rodents and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing. If we allow an animal, you must sign a separate animal addendum, which may require additional deposits, rents, fees or other charges. An animal deposit is considered a general security deposit. You must remove an unauthorized animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. We will authorize assistance animals needed because of a disability for you, your guests, and occupants pursuant to the parameters and guidelines established by federal, state and local Fair Housing laws. We may require a written statement from a qualified professional verifying the need for the support and/or service animal. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove an unauthorized animal by (1) leaving, in a conspicuous place in the apartment, a 24-hour written notice of intent to remove the animal, and (2) following the procedures of paragraph 28 (When We May Enter). We may keep or kennel the animal or turn it over to a humane society or local authority. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. We'll return the animal to you upon request if it has not already been turned over to a humane society or local authority. You must pay for the animal's reasonable care and kenneling charges. We have no lien on the animal for any purpose.

**28. WHEN WE MAY ENTER.**   Pursuant to Fla. Stat. §83.53, we may enter the dwelling unit at any time for the protection or preservation of the premises, in the case of an emergency, or if you unreasonably withhold consent. If you or any guest or occupant is present, then repairers, servicers, contractors, our representatives or other persons listed in (2) below may peacefully enter the apartment at reasonable times for the purposes listed in (2) below. If nobody is in the apartment, then such persons may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary in emergencies) if:

(1)   we provide you with written notice to enter at least 12 hours prior to the entry to take place between the hours of 7:30 a.m. and 8:00 p.m.; and

(2)   entry is for: responding to your request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; changing filters; testing or replacing smoke-detector batteries; retrieving unreturned tools, equipment or appliances; preventing waste of utilities; exercising our contractual lien; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or access control devices; removing or rekeying unauthorized access control devices; removing unauthorized window coverings; stopping excessive noise; removing health or safety hazards (including hazardous materials), or items prohibited under our rules; removing perishable foodstuffs if your electricity is disconnected; removing unauthorized animals; cutting off electricity according to statute; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing entry as courtesy when you are away or have requested such inspection; allowing entry by a law officer with a search or arrest warrant, or in hot pursuit; showing apartment to prospective residents (after move-out or vacate notice has been given); showing apartment to government inspectors for the limited purpose of determining housing and fire ordinance compliance by us and to lenders, appraisers, contractors, prospective buyers, or insurance agents; or any other reasonable business purpose.

**29. MULTIPLE RESIDENTS OR OCCUPANTS.**   Each resident is jointly and severally liable for all lease obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of lease termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 41 (Deposit Return, Surrender, and Abandonment).

©2018, National Apartment Association, Inc. - 2/2018, Florida

☑ Blue Moon eSignature Services Document ID: 151684513

## Replacements

**30. REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, or assignment is allowed only when we consent in writing.

Procedures for Replacement. If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; or (2) the remaining and replacement residents must sign an entirely new Lease

Contract. Unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right to occupancy or a security deposit refund, but will remain liable for the remainder of the original Lease Contract term unless we agree otherwise in writing—even if a new Lease Contract is signed.

## Responsibilities of Owner and Resident

**31. RESPONSIBILITIES OF OWNER.** We'll act with customary diligence to:

(1) keep common areas reasonably clean, subject to paragraph 25 (Condition of the Premises and Alterations);

(2) maintain fixtures, furniture, hot water, heating and A/C equipment;

(3) comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and

(4) make all reasonable repairs, subject to your obligation to pay for damages for which you are liable.

If you violate any of the above or other material provisions of the lease, you may terminate this Lease Contract and exercise other remedies under state statute only as follows:

(a) you must make a written request for repair, maintenance, or remedy of the condition to us, specifying how we have failed to comply with Florida law or with the material provisions of this lease and indicating your intention to terminate the lease if the violation is not corrected within seven (7) days after delivery of the notice;

(b) after receiving the request, we have a reasonable time to repair or remedy the condition, considering the nature of the problem and the reasonable availability of materials, labor, and utilities;

(c) if our failure to comply with Florida law or material provisions of the rental agreement is due to causes beyond our control and we have made and continue to make every reasonable effort to correct the failure to comply, you may also exercise other statutory remedies.

All rent must be current at the time you give us notice of noncompliance.

**32. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates this Lease Contract, apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; or (6) any illegal drugs or paraphernalia are found in your apartment.

**Termination of Rental Agreement - Your Failure to Pay Rent Due.** If you default by failing to pay rent when due and the default continues for three (3) days, not counting Saturday, Sunday, and court-observed legal holidays, after delivery of a written demand for payment of the rent or possession of the premises, we may terminate the rental agreement. Termination of this lease for non-payment of rent, or termination of your possession rights, filing of an action for possession, eviction, issuance of a writ of possession, or subsequent reletting doesn't release you from liability for future rent or other lease obligations.

**Termination of Rental Agreement - Your Failure to Comply with F.S. 83.52 or Material Provisions of the Lease.**

(1) If you default by materially failing to comply with F.S. 83.52 or material provisions of this lease, the rules and regulations, or any addenda (other than failure to pay rent due), and the non-compliance is of a nature that YOU SHOULD NOT BE GIVEN AN OPPORTUNITY TO CURE or if your non-compliance CONSTITUTES A SECOND OR CONTINUING NON-COMPLIANCE WITHIN TWELVE (12) MONTHS OF A SIMILAR VIOLATION, we may terminate the lease by delivering written notice specifying the nature of the non-compliance and our intention to terminate the lease. Upon receiving such a lease termination notice without opportunity to cure or constituting a second violation within 12 months, you will have seven (7) days from delivery of the notice to vacate the apartment and premises. Examples of non-compliance which are without opportunity to cure include, but are not limited to, destruction, damage, or misuse of our or other resident's property by your intentional acts or a subsequent or continued unreasonable disturbance.

(2) If you default by materially failing to comply with F.S. 83.52 or material provisions of this lease, the rules and regulations, or any addenda (other than failure to pay rent due), and the non-compliance is of a nature that YOU SHOULD be given an opportunity to cure it, we may deliver a written notice to you specifying the nature of the non-compliance and notifying you that unless the non-compliance is corrected within seven (7) days of delivery of the notice, we may terminate the lease. If you fail to correct the violation within seven (7) days of receiving such notice

or if you repeat same conduct or conduct of a similar nature within a twelve (12) month period, we may terminate your lease without giving you any further opportunity to cure the non-compliance as provided above. Examples of non-compliance in which we will give you an opportunity to cure the violation include, but are not limited to, unauthorized pets, guests, or vehicles, parking in an unauthorized manner, or failing to keep the apartment and premises clean and sanitary. We will also have all rights under Florida law and this lease to tow or remove improperly parked vehicles in addition to our remedy of terminating the lease for such violations.

Termination of this lease for non-compliance with F.S. 83.52 or material provisions of the lease, termination of your possession rights, filing of an action for possession, eviction, issuance of a writ of possession, or subsequent reletting doesn't release you from liability for future rent or other lease obligations.

**Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without demand; (2) we may file a holdover eviction lawsuit pursuant to Fla. Stat. §83.58 to recover possession of the dwelling unit, double the amount of rent due for each day that you continue to holdover and refuse to surrender possession during the holdover period, breach of contract damages, attorney fees and court costs as may be applicable; or (3) at our option, we may extend the Lease Contract term—for up to one month from the date of notice of Lease Contract extension—by delivering written notice to you or your apartment while you continue to hold over.

**Other Remedies.** We may report unpaid amounts to credit agencies. If we, or a third-party debt collector we use, try to collect any money you owe us, you agree that we or the debt collector may call you on your cell phone and may use an automated dialer. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10 (Special Provisions), in addition to other sums due. Upon your default, we have all other legal remedies under state statute. Unless a party is seeking exemplary, punitive, sentimental or personal-injury damages, the prevailing party may recover from the non-prevailing party attorney's fees and all other litigation costs. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). All unpaid amounts bear 18% interest per year from due date, compounded annually. You must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline. Unless modified by Addendum, you will also be liable for all of our actual damages related to your breach of the Lease Contract.

**Choice of Remedies and Mitigation of Damages.** If you move out early, you'll be subject to paragraph 11 (Early Move-Out) and all other remedies. If we regain possession of the apartment as a result of your breach of the lease, or because you surrendered possession of the apartment, or because you abandoned possession of the apartment, or because we obtained possession through eviction proceedings, unless modified by Addendum, we may either (a) treat the lease as terminated and re-take possession FOR OUR OWN ACCOUNT; (b) re-take possession of the apartment FOR YOUR ACCOUNT and attempt in good faith to re-let it on your behalf; or (c) take no action to obtain possession or re-let the apartment and continue to collect rent from you as it comes due. If we take possession of the apartment for our own account, then you will have no further liability for rents under the remainder of the lease. If we take possession of the apartment for your account and attempt to re-let it, you will remain liable for the difference between the rental remaining due under the lease and the amount we are able to recover by making a good faith effort at re-letting the premises on your behalf. We are not required to make an election of which remedies we choose to pursue nor notify you of which remedies we will select.

**Lease Renewal When A Breach or Default Has Occurred.** In the event that you enter into a subsequent Lease prior to the expiration of this Lease and you breach or otherwise commit a default under this Lease, We may, at our sole and absolute discretion, terminate the subsequent Lease, even if the subsequent Lease term has yet to commence. We may terminate said subsequent Lease by sending you written notice of our desire to terminate said subsequent Lease.

**Remedies Cumulative.** Except where limited or prohibited by law, any remedies set forth herein shall be cumulative, in addition to, and not in limitation of, any other remedies available to Landlord under any applicable law.

☑ Blue Moon eSignature Services Document ID: 151684513

## General Clauses

**33. MISCELLANEOUS.** You understand and acknowledge that neither we nor any of our representatives have authority to make any statements, promises or representations in conflict with or in addition to the information contained in this Lease Contract or by a separate written agreement signed by you and us, and we hereby specifically disclaim any responsibility for any such statements, promises or representations. You acknowledge that you have not relied upon any such statements, promises or representations in signing this Lease Contract and waive any rights or claims arising from any such statements, promises or representations. Any current or prior understandings, statements, representations and agreements, oral or written, including but not limited to, renderings or representations in brochures, advertising or sales materials and oral statements of our representatives, if not specifically expressed in this Lease Contract, Addenda or separate writing, are void and have no effect. You acknowledge and agree that you have not relied on any such items or statements in signing this Lease Contract. This Lease Contract is the entire agreement between you and us. Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing. Any dimensions and sizes provided to you relating to the apartment are only approximations or estimates as actual dimensions and sizes may vary. No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, liens, or other rights isn't a waiver under any circumstances. Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter or fax that was given. Fax or electronic signatures are binding. All notices must be signed.

Exercising one remedy won't constitute an election or waiver of other remedies. Unless prohibited by law or the respective insurance policies, if you have insurance covering the apartment or your personal belongings at the time you or we suffer or allege a loss, you and we agree to waive any insurance subrogation rights. All remedies are cumulative. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. All provisions regarding our non-liability or non-duty apply to our employees, agents, and management companies. This Lease Contract binds subsequent owners. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract. All notices and documents may be in English and, at our option, in any language that you read or speak. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option. All Lease Contract obligations must be performed in the county where the apartment is located.

**RADON GAS:** We are required by Florida Statute 404.056(5) to give the following notification to you. "Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon gas and radon testing may be obtained from your county health department."

**WAIVER OF JURY TRIAL.** To minimize legal expenses and, to the extent allowed by law, you and we agree that a trial of any lawsuit based on statute, common law, and/or related to this Lease Contract shall be to a judge and not a jury.

**CONDOMINIUM OR HOME OWNERS ASSOCIATION RULES:** To the extent applicable, you acknowledge that you have reviewed, understand and will abide by any Condominium or Home Owner Association Rules and Regulations ("HOA Rules") that may be in effect and promulgated from time to time. Your failure to abide by any HOA Rules is a material breach of this Lease Contract. A copy of the HOA rules is on file at the office.

**Consent to Solicitation.** You hereby expressly authorize us, our representative(s), and any collection agency or debt collector (hereinafter collectively referred to as the "Authorized Entities") to communicate with you. The communication may be made through any lawful method for any lawful reason related to amounts due and owing under this Lease. You authorize any and all of the communication methods even if you will incur a fee or a cost to receive such communications. You further promise to immediately notify the Authorized Entities if any telephone number or email address or other unique electronic identifier or mode that you provided to any Authorized Entity changes or is no longer used by you.

All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

You affirmatively state that you are not a criminal sex offender.

**Obligation to Vacate.** If we provide you with a notice to vacate, or if you provide us with a written notice to vacate or intent to move-out in accordance with the Lease Terms paragraph, and we accept such written notice, then you are required to vacate the apartment and remove all of your personal property therefrom at the expiration of the Lease term, or by the date set forth in the notice to vacate, whichever date is earlier, without further notice or demand from us.

Although the property may currently be providing cable on a bulk basis to the resident, the property may, with 30 days notice to the resident, cease providing cable and the resident will contract directly with the cable provider for such services.

**FORCE MAJEURE:** If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

**34. PAYMENTS.** Payment of all sums is an independent covenant. At our option and without notice, we may apply money received (other than sale proceeds under paragraph 13 (Contractual Lien and Property) or utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments. We do not have to accept and may reject, at any time and at our discretion, any third party checks or any attempted partial payment of rent or other payments.

**35. ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

## When Moving Out

**36. MOVE-OUT NOTICE.** Before moving out, either at the end of the lease term, any extension of the lease term, or prior to the end of the lease term, you must give our representatives advance written notice of your intention to vacate as required by the Lease Terms paragraph. If you move out prior to the end of the lease term, your notice does not act as a release of liability for the full term of the Lease Contract. You will still be liable for the entire Lease Contract term if you move out early (see Release of Resident) except if you are able to terminate the Lease Contract under a separate Addendum, the statutory rights explained under paragraph 11 (ReLet; Early Move-Out), paragraph 22 (Release of Resident), and/or paragraph 23 (Military Personnel Clause). All notices to vacate must be in writing and must provide the date by which you intend to vacate. If the notice does not comply with the time requirements of the Lease Terms paragraph, even if you move by the last date in the lease term, you will be responsible for damages permitted under the lease and law. If you fail to vacate by the date set forth in any notice to vacate, we may seek the remedies and damages specified under the "Holdover" paragraph, or we may deem your notice void and you must submit a new written notice. If you fail to provide proper notice and vacate, you will be responsible for damages permitted under the lease and law.

**37. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the lease term or renewal period ends unless all rent for the entire lease term or renewal period is paid in full. You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must vacate the apartment before the fifteen (15) day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**38. CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**39. MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

**40. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing smoke-detector batteries; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone or TV cable service or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized access control devices or alarm systems; packing, removing, or storing property removed or stored under paragraph 13 (Contractual Lien and Property: Left in Apartment); removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-related charges under paragraph 27

© 2018, National Apartment Association, Inc. - 2/2018, Florida

☑ Blue Moon eSignature Services Document ID: 151684513



## <u>Cart and Trash Policy</u>

**CARTS** - In the event that you, or anyone living in your suite that is on your lease or visiting, brings a shopping cart from a store onto The Westbury Property or in the building will receive a bill with the appropriate charges, that bill will be sent to your suite. Personal buggies, that are purchased by you and are able to be folded down and stored in your apartment are approved and are permitted on property.

**COMPACTOR** -The compactor is located outside the mail room door and is where anything that cannot be recycled is to be disposed of. Please make sure boxes are broken down and garbage is in a closed tied bag. All residents are required to take their garbage to the compactor and place the bag inside the compactor and press the compact button each time anything is placed inside. Failure to do so will result in a charge being added to your account and a bill will be sent to your apartment. At no time should any trash or personal items be left outside or around the compactor, thrown over the fence, thrown over balcony, if you need assistance discarding your trash please contact the leasing office and someone will make arrangements to help.

**FURNITURE** - Furniture and mattresses are never to be disposed of on property. It is the resident's responsibility to schedule the elevator to remove the furniture from the building and to have it taken off the premises at their own expense. Anyone found leaving these items anywhere on property will receive a bill.

**Fines:**
**Carts: $25 per cart**
**Trash thrown over fence/balcony: $25 per bag**
**Trash left outside compactor or on grounds: $25 per bag**
**Furniture left on property: $150\* subject to vary based on items abandoned**

. This is for your protection as well as ours- **NO EXCEPTIONS WILL BE MADE.**

| | |
|---|---|
| *Christopher* | 09/11/2018 |
| Lessee | Date |
| *Don* | 09/11/2018 |
| Lessee | Date |
| | |
| Lessee | Date |
| | |
| Lessee | Date |
| *Kelly Dunmeyer* | 09/12/2018 |
| Lessor | Date |



# SHORT-TERM LEASE ADDENDUM



1. **DWELLING UNIT DESCRIPTION.** Unit No. **213** **1495 Harden Ridge Loop** (street address) in **Apopka** (city), Florida, **32703** (zip code).

2. **LEASE CONTRACT DESCRIPTION.** Lease Contract date: **September 14, 2018** Owner's name: **Harden Ridge Apartments**

   Residents (list all residents):
   **Carina Brooks King, James King**

   This document shall serve as an addendum (this "Addendum") that is hereby incorporated into and made part of the Lease Contract (the "Lease") between Resident and Owner. Where the terms of the Lease and this Addendum may conflict, the terms of this Addendum shall control.

3. **PURPOSE OF ADDENDUM.** We recognize that you have special circumstances that require a short-term Lease Contract. By entering this Addendum with you, we have agreed to modify the terms of your Lease Contract to allow more flexibility in your lease term and move-out notice.

4. **LEASE CONTRACT TERMS.** The language of the Lease Terms paragraph of the Lease Contract is deleted in its entirety and replaced by the language in this Addendum:

   The initial term of the Lease Contract begins on the **1st** day of **October**, **2018** (year), and ends at midnight on the **30th** day of **September**, **2019** (year).

   The Lease Contract, as amended by this Addendum, does not automatically renew. The Lease Contract will terminate on the date indicated above, unless you provide us with a written request to renew or extend the Lease Contract term **and** we give you written or electronic approval of your request.

5. **WAIVER AND MODIFICATION OF MOVE-OUT NOTICE.** The language of the Move-Out Notice paragraph of the Lease Contract is deleted in its entirety and replaced by the language in this Addendum:

   We agree to waive the move-out notice required to be given by you prior to the end of the Lease Contract term. As a courtesy, we request that you provide us with a written notice of your move-out date.

   Moving out prior to the end of the Lease Contract term will not release you from liability for the full term of the Lease Contract, any renewal term(s), and/or lease extensions. You will still be liable for the entire Lease Contract term if you move out early (Early Move-Out paragraph), except as otherwise expressly set forth in the Lease Contract.

6. **SHOWING THE UNIT.** We may begin showing your unit to prospective residents 30 days before your Lease Contract term ends, per the When We May Enter paragraph of the Lease Contract.

7. **OTHER RIGHTS UNCHANGED.** Except as otherwise expressly set forth in this Addendum, all other contractual rights and obligations of both you and us under the Lease Contract remain unchanged.

8. **OBLIGATION TO VACATE.** You have an obligation to vacate the dwelling at the end of the Lease Contract term. Please contact us if moving out by the end of the Lease Contract term becomes a problem for you. You may be able to extend your Lease Contract term if we have not already relet the dwelling to others. We and any successor residents who may be leasing your unit will be relying on your moving out per the Lease Contract termination date. Therefore, you may not hold over beyond such a date without our written or electronic consent—even if it means you have to make plans for temporary lodging elsewhere. You will be subject to the terms and conditions of the Default by Resident paragraph of the Lease Contract should you hold over.

9. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this form:

   **6 to 8 months = $100, or 8 to 11 months = $75.**

10. **SEVERABILITY.** If any provision of this Addendum or Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Addendum or Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Addendum while preserving the intent of the parties.

**Resident or Residents**
*(All residents must sign)*

_____
_____
_____

**Owner or Owner's Representative** *(signs below)*

*Kelly Dunmeyer*

**Date of Signing Addendum**

_____09/12/2018_____

☑ Blue Moon eSignature Services Document ID: 151684513

# Indemnification Addendum

This is an addendum to your Apartment Lease Contract for apartment number ____213____ in the ____Marden Ridge Apartments____ (Community/Apartments) in __FL__ (State). It is intended to be a part of the Apartment Lease Contract between the parties for leasing a residential rental unit. Residents are required to secure liability coverage prior to their move in date.

Owner: **NM Residential**

Resident(s): **Carina Brooks King**                                   **James King**

Premises:          **Marden Ridge Apartments**

Participation Cost (if paid through Owner's Program) **$12.00**____ **per month**

**1. Liability Insurance-Insurance Indemnity.** Notwithstanding anything in the Apartment Lease Contract to the contrary, Resident shall indemnify and hold Owner harmless from any claims, damages, liabilities and expenses (including attorney's fees and costs) for damages or injury to any person or any property occurring within the leased premises [apartment unit], or any part thereof, attributed or caused by resident's or resident's guest's actions or inactions. As required by the Apartment Lease Contract, resident shall be obligated to maintain liability coverage protection during the Term of the Apartment Lease Contract and any subsequent renewal periods. Coverage is required in the amount of one hundred thousand dollars ($100,000.00) for damages to Owner's and third party's property with provisions covering at least perils of fire, explosion, sewer backup, smoke, and accidental water discharge. Resident shall request that the Owner be named as an additional insured on Resident's policy. Such policy shall be written as a policy not contributing with and not in excess of coverage which Owner may carry. It is agreed that Owner carries insurance for its own protection; Resident is not a coinsured under Owner's own insurance nor a beneficiary thereof. **Resident shall be responsible to Owner for all costs of repair for damages as stated herein and in the Apartment Lease Contract regardless of Owner's insurance.**

**2. Costs of Participation.** All costs of participation as required in this addendum shall be paid by Resident. Resident agrees to purchase coverage from an insurance company of his/her choice, or to participate in the Owner's program. The Owner's program, **Renters Legal Liability™ (RLL)**, shall be deemed to meet the requirements of this addendum. It is NOT a policy issued to the Resident. The resident agrees to pay such amount above in addition to all other obligations contained within the Residential Rental Agreement. The RLL program cost shall be considered additional rent for purposes of the Residential Rental Agreement. RLL is a property damage liability only program. **Renters Legal Liability™ will cover your personal property and contents according to the Acknowledgment of Enrollment provided that: a) the claim submitted by the community, on a single loss, was originated by a resident who is participating under the Owner's Program, and b) the total loss is less than $100,000 (subject to $1,000 deductible) and the losses of the owner and the non-responsible, impacted residents are satisfied, if the program limit has not been exhausted. If the $100,000 RLL program limit has been exhausted, there is no personal property protection available for any resident including those enrolled in the RLL program. It is recommended that you obtain supplemental personal property and contents coverage.**

Dated and effective as of: __09/14/2018____

[X] I will purchase my own insurance and provide a copy to Owner.
[ ] I accept the costs of insurance as a rider to the Owner's program.

_____          _____
Resident                                                      Resident

_____          _____
Resident                                                      Resident

_____
Property Manager                    [✓] Blue Moon eSignature Services Document ID: 151684513

## E-SIGNATURE CERTIFICATE
*This certificate details the actions recorded during the signing of this Document.*



### DOCUMENT INFORMATION

| | |
|---|---|
| Status | Signed |
| Document ID | 151684513 |
| Submitted | 09/12/18 |
| Total Pages | 39 |
| Forms Included | Apartment Lease Form, Choice of Damages, Early Termination Addendum, Additional Special Provisions, Animal Addendum, All-in-One Utility Addendum, Bed Bug Addendum, Mold Information and Prevention Addendum, Satellite Dish or Antenna Addendum, Community Policies, Rules, & Regulations, Addendum for Rent Concession, Renter's or Liability Insurance Addendum, No-Smoking Addendum, Parking Addendum, Crime/Drug Free Housing Addendum, Short-Term Subletting or Rental Prohibited, Washer and Dryer Addendum, Package Acceptance Addendum, Photo, Video, and Statement Release Addendum, Short-Term Lease Addendum, Cart & Trash Policy, Indemnification Addendum, Move-Out Charge List, Pool Rules & Regulations, Resident Lock Out Agreement |

### PARTIES

**Carina Desiree Brooks King**
signer key: 0aff350a5ac7d00458cb16a3b5172998
IP address: 71.42.23.237
signing method: Blue Moon eSignature Services
verified email: cbrooksking@gmail.com
authentication method: eSignature
browser: Mozilla/5.0 (iPhone; CPU iPhone OS 11_4_1 like Mac OS X) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/11.0 Mobile/15E148 Safari/604.1



**James Donavan King**
signer key: 993e246d15f3d91294c1512d20e7a9aa
IP address: 71.42.23.237
signing method: Blue Moon eSignature Services
verified email: cbrooksking@gmail.com
authentication method: eSignature
browser: Mozilla/5.0 (iPhone; CPU iPhone OS 11_4_1 like Mac OS X) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/11.0 Mobile/15E148 Safari/604.1

**Kelly Dunmeyer**
signer key: 882b448c0809e5e495394234ef1ab840
IP address: 10.100.10.21
signing method: Blue Moon eSignature Services
verified email: kdunmeyer@nmresidential.com
authentication method: eSignature
browser: PHP 5.5.9-1ubuntu4.20/SOAP



### DOCUMENT AUDIT

| | | |
|---|---|---|
| 1 | 09/11/18 02:21:06 PM CDT | Carina Desiree Brooks King accepted Consumer Disclosure |
| 2 | 09/11/18 02:22:29 PM CDT | Carina Desiree Brooks King initialed Apartment Lease Form |
| 3 | 09/11/18 02:22:47 PM CDT | Carina Desiree Brooks King signed Apartment Lease Form |

florida
child
neurology

A Division of Florida Pediatric Associates, LLC

Carl R. Barr, DO
Mariuza K. Kolinowski, MD
Mohammad Salim, MD
Ph: 407-897-3544
Fax: 407-897-4016
Toll Free: 1-866-356-3075

May 17, 2019

Re: ~~Jason~~ King

To Whom It May Concern:

Jason King has been my patient since October of 2016. At that time, I diagnosed ~~Jason~~ with Autism.

Patients with Autism can be sensitive to loud noises, vibrations, lights, sounds, and sensations. Although Autism is more widely known and diagnosed these days, what is known about each individual patient's needs and triggers is widely left to their parents, caregivers, physicians, and teachers.

In the case of ~~Jason~~, he is sensitive to loud sounds and vibrations. I feel that he would benefit from a quiet environment—away from loud noises, heavy vibrations such as from traffic, construction, or trains.

It is my understanding that the Department of Urban Housing and Development under the Fair Housing Act makes specific Federal requirements for persons with disabilities. Please consider making accommodations for my patient.

Sincerely,

Carl R. Barr, D.O.
Child Neurologist

EXHIBIT
B

6150 Metrowest Blvd., Suite 105 ● Orlando, FL 32835
www.floridachildneurology.com

Florida Child Neurology (FCN)
6150 Metrowest Blvd. Ste. 105 Orlando, FL 32835
P: 407-897-3544 F: 407-897-4016

02/19/2019

Re: ▓▓▓▓▓ KING
    ▓▓▓▓2013

To Whom It may Concern:

▓▓▓▓ is a patient in our child neurology clinic. He has been diagnosed with the following:

- LACK OF EXPECTED NORMAL PHYSIOLOGICAL DEVELOPMENT (ICD-783.40) (ICD10-R62.50)
- HYPOTONIA (ICD-728.9) (ICD10-M62.9)
- AUTISM SPECTRUM DISORDER (ICD-299.00) (ICD10-F84.0)

This is a note indicating child's diagnosis only, to start any school evaluations for either a 504 plan or an IEP. Please note that if further information is required, such as a detailed letter of diagnosis, forms, and/or medical records, fees may apply (attached is the fee guideline for each request; these fees are parent responsibility).

Thank you for your consideration toward ▓▓▓▓. If you have any further questions, please feel free to contact our office.

Sincerely;

Carl R. Barr, D.O.
Florida Child Neurology, PLLC



COMMUNITY
# LEGAL SERVICES
*of* MID-FLORIDA

122 E. Colonial Drive, Suite 200
Orlando, FL 32801-1219
Ph: (407) 841-7777 | Fax: (407) 246-1661
www.clsmf.org

May 29, 2019

Marden Ridge Apartments
1595 Marden Ridge Loop
Apopka, FL 32703

        Re:      James and Carina King
                      Marden Ridge Apartment #213
                      Reasonable Accommodation Request

Dear Madam/Sir:

    Please be advised that I have the pleasure of advocating for the King family in protecting their rights under the Fair Housing Act. This letter serves as a formal reasonable accommodation request for my clients, James and Carina King who currently reside in apartment 213 at Marden Ridge. The King's child is autistic and is sensitive to loud noises. As you know, my clients have made multiple complaints about the noise to management at Marden Ridge as well as law enforcement. Since no action was taken by Marden Ridge to remedy the noise complaints, they are now in need of a reasonable accommodation. Housing providers such as Marden Ridge are required to make "reasonable accommodations" in rules, policies, practices, or services when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling." The Fair Housing Act (FHA), 42 U. S.C. 3604 and the Florida Fair Housing Act, Fla. Stat. 760.20 et seq.

    The King's child is being treated by Dr. Carl Barr a local neurologist for his autism. According to Dr. Barr, the King's child has difficulty with loud noises and needs to be in an apartment that is not subjected to loud and sudden noises. Their current apartment, as has been pointed out to management, is subjected to neighbors who are loud and make noises at various times of the day and night. This has prevented their child from having an equal opportunity to use and enjoy their apartment. Therefore, the King's are formally requesting that Marden Ridge move them from apartment 213 to a different 2 bedroom – 2 bath apartment within the complex that is free from the loud noises they are currently subjected to. I have attached a copy of the letter from their physician that

*Putting Justice in Everyone's Reach*

Serving: Brevard, Citrus, Flagler, Hernando, Lake, Marion,
Orange, Osceola, Putnam, Seminole, Sumter and Volusia Counties



EXHIBIT
C





documents the medical need and nexus between the disability and the need for the accommodation.

Please note, federal law prohibits you from inquiring as to the nature or severity of my client's disability. For further information, see **Bhogaita v. Altamonte Heights Condominium Ass 'n., Inc., 765 F.3d 1277 (2014)**. Additionally, any adverse or retaliatory action taken against my clients for exercising their Fair Housing rights is also a violation of the Act and will be reported to HUD.

The King's have also been informed that they are not allowed to access all areas of the apartment complex, including offices, clubhouse and various amenities that they are paying a fee for. This discriminatory action against them should not be taking place and would ask that you provide us something in writing that states they have full access to all areas of the apartment complex.

Please direct any questions, comments and replies **to my attention only** regarding these issues. I would like to get these issues worked out as soon as possible and would request a response no later than Monday, June 10, 2019.  Thank you for your attention in this matter and should you have any questions or concerns, please do not hesitate to contact the undersigned.

Sincerely,

Jeffrey Hussey, Esq.
*Managing Attorney of Fair Housing Programs*

JRH
Enclosure
Cc. Client
   **MRAD Phase I, LLC**
   151 Southhall Lane
   Suite 150
   Maitland, FL 32751

florida
child
neurology

May 27, 2019

Re: ██████ King

To Whom It May Concern:

██████ King has been my patient since October of 2016. At that time, I diagnosed ██████
with Autism.

Patients with Autism can be sensitive to loud noises, vibrations, lights, sounds and
sensations. Although Autism is more widely known and diagnosed these days, what is
known about each individual patient's needs and triggers is widely left to their parents,
caregivers, physicians and therapies.

In the case of ██████, he is sensitive to loud sounds and vibrations. I feel that he would
benefit from a quiet environment, away from loud noises, heavy vibrations such as
from traffic, construction or trains.

It is my understanding that the Department of Urban Housing and Development, under
the Fair Housing Act, makes specific Federal requirements for persons with disabilities.
Please consider making accommodations for my patient.

Sincerely,

Carl P. Barr, D.O.
Child Neurologist

1801 Meadows Blvd, Suite 105 • Orlando, FL 32835
www.floridachildneurology.com



COMMUNITY
# LEGAL SERVICES
*of* MID-FLORIDA

122 E. Colonial Drive, Suite 200
Orlando, FL 32801-1219
Ph: (407) 841-7777 | Fax: (407) 246-1661
www.clsmf.org

June 10, 2019

Marden Ridge Apartments
1595 Marden Ridge Loop
Apopka, FL 32703

Re:   James and Carina King
     Marden Ridge Apartment #213
     Reasonable Accommodation Request

Dear Madam/Sir:

This will follow up my letter to you of May 29, 2019. Unfortunately, I got no response from you regarding my Client's reasonable accommodation request. HUD and case law as interpreted silence as a denial for the request. We would prefer to be able to resolve this issue without having to escalate to the next level. In the spirit of cooperation, we will extend the deadline to provide confirmation of the reasonable accommodation to June 17, 2019. If I do not hear back from you by that date, then the King's will have no choice but to take their Fair Housing Complaint to the next level and seek all available remedies to protect their rights under the Fair Housing Act.

As before, please direct any questions, comments and replies to my attention only regarding these issues. I would like to get these issues worked out as soon as possible. Thank you for your attention in this matter and should you have any questions or concerns, please do not hesitate to contact the undersigned.

Sincerely,

Jeffrey Hussey, Esq.
Managing Attorney of Fair Housing Programs

JRH
Enclosure
Cc. Client
  MRAD Phase I, LLC
  151 Southhall Lane
  Suite 150
  Maitland, FL 32751

*Putting Justice in Everyone's Reach*

Serving: Brevard, Citrus, Flagler, Hernando, Lake, Marion, Orange, Osceola, Putnam, Seminole, Sumter and Volusia Counties

**EXHIBIT**
D





M Gmail

1/1/2019

Gmail - Online Renewal Notification

## Online Renewal Notification
2 messages

**mardenridge@nmresidential.com** <mardenridge@nmresidential.com>
To: cbrooksking@gmail.com
Cc: cbrooksking@gmail.com

Mon, Jun 17, 2019 at 2:33 PM

Carina Brooks-King <cbrooksking@gmail.com>

Dear Residents,

As your lease expires on 9/30/2019, Marden Ridge Apartments is offering to renew your lease for 213. Please log on to your Resident Connect account to review your lease renewal options and renew your lease online under the My Lease tab.

Login to Resident Connect

If you need to create an account, please use this link: Create an account

If you have any questions, please call our office.

Thank you,
Maria Velez
Donna Wilkenfeld
mardenridge@nmresidential.com
(407) 605-5977

EXHIBIT
E



COMMUNITY
**LEGAL SERVICES**
*of* MID-FLORIDA

122 E. Colonial Drive, Suite 200
Orlando, FL 32801-1219
Ph: (407) 841-7777 | Fax: (407) 246-1661
www.clsmf.org

July 15, 2019
Via Email and Us Mail

Atlanta Regional Office of FHEO
U.S. Department of Housing and Urban Development
Five Points Plaza
40 Marietta Street, 16th Floor
Atlanta, Georgia 30303-2806

Re:     **Subject:**      Fair Housing 903 Complaint
         **Complainant:** Carina King
         **Respondent:**  Marden Ridge Apartments

Dear Madam/Sir:

Please be advised that I have the pleasure of advocating for Ms. Mary Heald with regards to protection her Fair Housing rights. Please find attached to this letter her 903 Complaint which outlines the discrimination that she has incurred in her housing at the Pointe at Central.

Please note that my Client is scheduled to move in late August 2019 for the upcoming school year. I can be reached through my direct line (407) 705-5106 if you need to any additional information or need to discuss this matter in further detail.

I look forward to your investigation of this matter and its results.

Sincerely,

Jeffrey Hussey, Esq.
*Managing Attorney of Fair Housing Programs*

JRH
Enclosure
Cc: Client

**EXHIBIT**
F

*Putting Justice in Everyone's Reach*

Serving: Brevard, Citrus, Flagler, Hernando, Lake, Marion,
Orange, Osceola, Putnam, Seminole, Sumter and Volusia Counties



## HOUSING DISCRIMINATION COMPLAINT

**Inquiry Number:** _____

**CASE NUMBER:**

1. **Complaint**

   **Name:**      Carina Desiree King
   **Address:**   1495 Marden Ridge Loop
                  Apartment 213
                  Apopka, FL 32703

   **Representing Complainant:**

   Jeffrey R. Hussey, Esquire
   Managing Attorney of Fair Housing Programs
   Community Legal Services of Mid Florida
   122 East Colonial Drive, Suite 200
   Orlando, FL 32801
   (407) 705-5106
   jeffreyh@clsmf.org

2. **Other Aggrieved Persons**

   James Donovan King
   Jason Demetrius King

3. **The following is alleged to have occurred:**

   Discrimination based on disability
   Retaliation based on exercising of my Fair Housing rights

4. **The alleged violation occurred because of:**

   My son has a disability and we requested a reasonable accommodation based
   on that disability.

1

5. Address and location of the property in question:

> 1495 Marden Ridge Loop
> Apartment 213
> Apopka, FL 32703

6. Respondent(s):

> **MRAD Phase I, LLC**
> 21400 Lorain Road
> Cleveland, OH 44126
> d/b/a
> **Marden Ridge Apartments**
> 1594 Marden Ridge Loop
> Apopka, FL 32701
>
> **NM Residential, LLC**
> 151 Southhall Lane, Suite 150
> Maitland, FL 32751

7. The following is a brief and concise statement of the facts regarding the alleged violations:

> My son is autistic and has sensory sensitivity. He currently receives SSDI. He is under the active care of a physician for his condition. In approximately May of 2019, a new resident move in to the apartment upstairs. This new neighbor is constantly making loud noises and vibrations that are so strong, pictures have fallen off the wall. These loud noises triggers my son's sensory sensitivity and causes him to react adversely and to shut down. We complained to management and no action was taken. We were then told to register a complaint with the Community Officer, which we did. We were told that we needed to contact the police, which we did. We requested a reasonable accommodation that they move my family to a different apartment away from the loud noise or they move the new neighbor. They questioned the veracity of the complaint and we once again confronted management and the neighbor as the noise was continuing to aggravate my son's disability. I constantly complained but management would not agree to our accommodation request or take any action. After we had made the request, instead of trying to accommodate my son's disability, they sent us a 10 day letter saying that if we complained anymore we would be subject to eviction and also "banned" us from having any personal contact with management or to enter the management office, which in turn prevented us from being able to use the amenities that we were paying for as it would require us to go through management office. We contacted Community Legal Services of Mid Florida who got the appropriate medical documentation from my son's physician and a reasonable accommodation letter was sent on May 29, 2019 (letter attached as Exhibit "A"). They did not respond to the letter and a second letter was sent on June 10, 2019. They did not provide any response but

2

did contact my attorney by phone and he was told that they were not going to provide the reasonable accommodation and instead he was told that they were not going to renew my lease and any move from the current apartment would cost us a $300 transfer fee.

8. **The most recent date on which the alleged discrimination occurred:**

   Ongoing. Last formal request for reasonable accommodation in writing was on June 10, 2019 and the denial to the request was made verbally to my attorney on June 20, 2019.

9. **Types of Federal Funds identified:**

   N/A

10. **The acts alleged in this complaint, if prove, may constitute a violation of the following:**

    804(f)(1). 804(f)(2), and 804f3B of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988.

I declare under penalty of perjury that I have read this complaint (including any attachments) and that it is true and correct.

_____/s/Carina King_____                    ___07/15/2019_____

**Complainant**                                           **Date**

NOTE: HUD WILL FURNISH A COPY OF THIS COMPLAINT TO THE PERSON OR ORGNIZATION AGAINST WHOM IT IS FILED.



COMMUNITY
**LEGAL SERVICES**
*of* MID-FLORIDA

122 E. Colonial Drive, Suite 200
Orlando, FL 32801-1219
Ph: (407) 841-7777 | Fax: (407) 246-1661
www.clsmf.org

June 26, 2019

Marden Ridge Apartments
1595 Marden Ridge Loop
Apopka, FL 32701

      Re:  CLSMF File #  19-0309235
           **Carina King - Apartment 213**
           Reasonable Accommodation Request

Dear Madam/Sir:

    This will confirm my telephone conversation with Melody who had contacted us on behalf of Marden Ridge. We spoke on June 20, 2019. Unfortunately, she did not identify with whom she was calling on behalf of. Pursuant to that conversation, this will confirm that Marden Ridge will not be providing a reasonable accommodation as requested by the King's unless they pay a $300-unit transfer fee and further that they will not be renewing their lease once it expires.

    If any of this information is incorrect or I in any way misinterpreted the information given to me, please immediately let me know. Thank you for your attention in this matter.

Sincerely,

Jeffrey Hussey, Esq.
*Managing Attorney of Fair Housing Programs*

JRH
Cc. Client

*Putting Justice in Everyone's Reach*

Serving: Brevard, Citrus, Flagler, Hernando, Lake, Marion,
Orange, Osceola, Putnam, Seminole, Sumter and Volusia Counties

 



COMMUNITY
# LEGAL SERVICES
*of MID-FLORIDA*

122 E. Colonial Drive, Suite 200
Orlando, FL 32801-1219
Ph: (407) 841-7777 | Fax: (407) 246-1661
www.clsmf.org

June 10, 2019

Marden Ridge Apartments
1595 Marden Ridge Loop
Apopka, FL 32703

Re:     James and Carina King
        Marden Ridge Apartment #213
        Reasonable Accommodation Request

Dear Madam/Sir:

This will follow up my letter to you of May 29, 2019. Unfortunately, I got no response from you regarding my Client's reasonable accommodation request. HUD and case law as interpreted silence as a denial for the request. We would prefer to be able to resolve this issue without having to escalate to the next level. In the spirit of cooperation, we will extend the deadline to provide confirmation of the reasonable accommodation to June 17, 2019. If I do not hear back from you by that date, then the King's will have no choice but to take their Fair Housing Complaint to the next level and seek all available remedies to protect their rights under the Fair Housing Act.

As before, please direct any questions, comments and replies to my attention only regarding these issues. I would like to get these issues worked out as soon as possible. Thank you for your attention in this matter and should you have any questions or concerns, please do not hesitate to contact the undersigned.

Sincerely,

Jeffrey Hussey, Esq.
Managing Attorney of Fair Housing Programs

JRH
Enclosure
Cc. Client
    MRAD Phase I, LLC
    151 Southhall Lane
    Suite 150
    Maitland, FL 32751

---

*Putting Justice in Everyone's Reach*

Serving: Brevard, Citrus, Flagler, Hernando, Lake, Marion,
Orange, Osceola, Putnam, Seminole, Sumter and Volusia Counties






COMMUNITY
# LEGAL SERVICES
*of MID-FLORIDA*

122 E. Colonial Drive, Suite 200
Orlando, FL 32801-1219
Ph: (407) 841-7777 | Fax: (407) 246-1661
www.clsmf.org

May 29, 2019

Marden Ridge Apartments
1595 Marden Ridge Loop
Apopka, FL 32703

Re:     James and Carina King
        Marden Ridge Apartment #213
        Reasonable Accommodation Request

Dear Madam/Sir:

Please be advised that I have the pleasure of advocating for the King family in protecting their rights under the Fair Housing Act. This letter serves as a formal reasonable accommodation request for my clients, James and Carina King who currently reside in apartment 213 at Marden Ridge. The King's child is autistic and is sensitive to loud noises. As you know, my clients have made multiple complaints about the noise to management at Marden Ridge as well as law enforcement. Since no action was taken by Marden Ridge to remedy the noise complaints, they are now in need of a reasonable accommodation. Housing providers such as Marden Ridge are required to make "reasonable accommodations" in rules, policies, practices, or services when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling." The Fair Housing Act (FHA), 42 U. S.C. 3604 and the Florida Fair Housing Act, Fla. Stat. 760.20 et seq.

The King's child is being treated by Dr. Carl Barr a local neurologist for his autism. According to Dr. Barr, the King's child has difficulty with loud noises and needs to be in an apartment that is not subjected to loud and sudden noises. Their current apartment, as has been pointed out to management, is subjected to neighbors who are loud and make noises at various times of the day and night. This has prevented their child from having an equal opportunity to use and enjoy their apartment. Therefore, the King's are formally requesting that Marden Ridge move them from apartment 213 to a different 2 bedroom – 2 bath apartment within the complex that is free from the loud noises they are currently subjected to. I have attached a copy of the letter from their physician that

---

*Putting Justice in Everyone's Reach*

Serving: Brevard, Citrus, Flagler, Hernando, Lake, Marion,
Orange, Osceola, Putnam, Seminole, Sumter and Volusia Counties




documents the medical need and nexus between the disability and the need for the accommodation.

Please note, federal law prohibits you from inquiring as to the nature or severity of my client's disability. For further information, see **Bhogaita v. Altamonte Heights Condominium Ass 'n., Inc.,** 765 F.3d 1277 (2014). Additionally, any adverse or retaliatory action taken against my clients for exercising their Fair Housing rights is also a violation of the Act and will be reported to HUD.

The King's have also been informed that they are not allowed to access all areas of the apartment complex, including offices, clubhouse and various amenities that they are paying a fee for. This discriminatory action against them should not be taking place and would ask that you provide us something in writing that states they have full access to all areas of the apartment complex.

Please direct any questions, comments and replies **to my attention only** regarding these issues. I would like to get these issues worked out as soon as possible and would request a response no later than Monday, June 10, 2019.  Thank you for your attention in this matter and should you have any questions or concerns, please do not hesitate to contact the undersigned.

Sincerely,

Jeffrey Hussey, Esq.
*Managing Attorney of Fair Housing Programs*

JRH
Enclosure
Cc. Client
**MRAD Phase I, LLC**
151 Southhall Lane
Suite 150
Maitland, FL 32751



**florida child neurology**

May ██, 20██

Re: ████ King

To Whom It May Concern:

████ ██████ who has been my patient since October of 2016. At that time, I diagnosed ████ with Autism.

Patients with Autism can be sensitive to loud noises, vibrations, lights, sounds and sensations. Although Autism is more widely known and diagnosed these days, what is known about each individual patient's needs and triggers is widely left to their parents, caregivers, physicians and teachers.

In the case of ████, he is sensitive to loud sounds and vibrations. I feel that he would benefit from a quieter environment — away from loud noises, heavy vibrations such as from traffic, construction or trains.

It is my understanding that the Department of Urban Housing and Development, under the Fair Housing Act, makes specific Federal requirements for persons with disabilities. Please consider making accommodations for my patient.

Sincerely,

Carl R. Barr, D.O.
Child Neurologist

## NOTICE OF NON-RENEWAL OF LEASE AGREEMENT

Date: 7/31/19

James King                ,Carina Brooks King            ,
,                                ,
(All persons who signed the lease)
1495 Marden Ridge Loop #213
Apopka, FL 32703

Dear Resident(s):

Please accept this as written notification that your landlord has elected not to renew your Lease which expires on 9/30/19                    .  You are hereby notified that you must vacate your dwelling unit at the expiration of your Lease Agreement on 9/30/19            .

This notice in given to you in accordance with paragraph 3       of your Lease Agreement, which states in relevant part:

This lease contrct will be automacally renew MTM (Month to Month) unless either party gives at least 60 days written notice of termination or intent to move out as required by this paragraph and paragraph 36 (Move Out Notice)

Please make arrangements to turn in your keys, on or before the date specified above and vacate your apartment accordingly.  Failure to do so will result in your being a holdover tenant and subject to double the monthly rent pursuant to Florida Statute Section 83.58.  Should you become a hold-over tenant, we will file a judicial action seeking to recover possession of the rental unit, double the rent during the hold-over period, court costs and attorney fees.  If you vacate as requested herein and pay rent pursuant to the Lease Agreement through your lease expiration date, this matter will be resolved.

**PLEASE GOVERN YOURSELF ACCORDINGLY**

Sincerely,

(Authorized Agent for Landlord)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of:

☐ This notice was served personally
☑ The person(s) were absent from his/her last usual place of residence, and this notice was delivered and posted at the residence/address referenced above.

BY:  Donna Wilkenfeld                        DATE:  7/31/19
Authorized Agent for Landlord                Date of Service

Landlord: Marden Ridge
Address:   1595 Marden Ridge Loop
Apopka, Florida
Telephone:( 407  ) 605-5977

**EXHIBIT**
G